F. Christopher Austin, Esq.
Nevada Bar No. 6559
*caustin@weidemiller.com*
R. Scott Weide, Esq.
Nevada Bar No. 5541
*sweide@weidemiller.com*
**WEIDE & MILLER, LTD.**
10655 Park Run Drive, Suite 100
Las Vegas, NV 89144
Tel: (702) 382-4804
Fax: (702) 382-4805

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HAWK TECHNOLOGY SYSTEMS, LLC,<br><br>Plaintiff,<br>v.<br>JSAN SUBS INC. DBA CAPRIOTTI'S SANDWICH SHOP,<br><br>Defendant. | Case No.: 2:20-cv-01645<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Hawk Technology Systems, LLC ("Hawk" or "Plaintiff") files this Complaint for Patent Infringement against Defendant JSAN Subs Inc. dba Capriotti's Sandwich Shop ("Defendant") based on knowledge to itself and information and belief as to Defendant as follows.

**NATURE OF ACTION**

1.  Pursuant to 35 U.S.C. § 271, this is an action for infringement of U.S. Patent No. 10,499,091 ("the '091 Patent" or "Patent-in -Suit").

**PARTIES**

2.  Hawk is a limited liability company organized and existing under the laws of the State of Florida and maintains its principal place of business at 2 South Biscayne Blvd., Suite 3800, Miami, Florida 33131.

rsw-5041r1                             1

WEIDE & MILLER, LTD.
10655 PARK RUN DR.,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

3. Defendant JSAN Subs Inc. dba Capriotti's Sandwich Shop ("Capriotti's") is a Nevada corporation with a regular and established place of business at 1930 Village Center Circle #3-718, Las Vegas, NV 89134. Capriotti's may be served with process via its registered agent, DW Services of Nevada, LLC – Las Vegas at 8363 W. Sunset Rd Suite 200, Las Vegas, NV 89113.

## JURISDICTION AND VENUE

4. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq.*

5. Pursuant to 28 U.S.C. §§ 1331 and 1338, this Court has original jurisdiction over the subject matter of this action as it is an action arising under the Patent Laws of the United States.

6. This Court has personal jurisdiction over Defendant as: (i) Defendant conducts business in this Judicial District, directly or through intermediaries; (ii) at least a portion of the alleged infringements occurred in this Judicial District; and (iii) Defendant regularly solicits business, engages in other established and persistent courses of conduct, or derives revenue from goods and services provided to individuals in this Judicial District.

**7.** Venue is proper in this Judicial District under 28 U.S.C. § 1400(b) because Defendant is a domestic corporation in Nevada, has committed acts of infringement within this Judicial District and has established places of business in this Judicial District.

## THE PATENT-IN-SUIT

8. On December 3, 2019, the USPTO issued the '091 Patent, titled "High-Quality, Reduced Data Rate Streaming Video Production and Monitoring System," to Kinya Washino of Dumont, NJ and Barry Schwab of Bloomfield, MI. A true and correct copy of the '091 Patent is provided herewith as Exhibit 1.

WEIDE & MILLER, LTD.
10655 PARK RUN DR.,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

rsw-5041r1    2

9. Plaintiff is the owner and assignee of all substantial rights, title, and interest in the '091 Patent, as evidenced by the recorded assignment submitted herewith as Exhibit 2.

10. The '091 Patent is presumed valid under 35 U.S.C. § 282(a).

## BACKGROUND

11. Kinya Washino and Barry Schwab are the inventors of the inventions claimed and disclosed in the Patent-in-Suit.

12. Mr. Washino and Mr. Schwab each embody the spirit of the ingenious tinkerer who uses inventive skills and a deep understanding of the industry to resolve a long-standing problem that succeeded where others had failed.

13. Mr. Washino was born in Aichi Prefecture, Japan, on February 21, 1953. His parents operated a small commercial farm in this rural area. He became interested in communications and electronics at an early age, acquiring an amateur ham radio license by the time he was thirteen years old. During his junior high school and high school years, he built a transmitter and receiver from salvaged parts of an old tube television. From such experiences, he learned the basics of analog communications.

14. In 1974, Mr. Washino found a position as an audio recording engineer with a Japanese documentary film company working in the U.S. This expanded to other production and post-production tasks. During the years that Mr. Washino worked in this business, he gained a working knowledge of film production and of production and post-production processes.

15. After Mr. Washino returned to Japan, he earned an Electronics Engineering degree from Nihon Kogakuin Technical College in Tokyo in 1979, and in 1981 acquired a first-class broadcast engineering license. By that time, Mr. Washino was already working as a camera design engineer for Ikegami, a Japanese manufacturer of high-end video cameras. In 1985, he was appointed Video Field Sales Engineer and sent to the U.S. This experience enabled Mr.

WEIDE & MILLER, LTD.
10655 PARK RUN DR., SUITE 100
LAS VEGAS, NEVADA 89144
(702) 382-4804

Washino to acquire a deep insight into the competitive market for equipment and services and to appreciate the needs of and problems encountered by video professionals. Mr. Washino then decided to establish himself in the U.S. permanently and formed his own video services company, focused on video production, post-production, and video cassette duplication in New York City.

16. By late 1986, Mr. Washino had acquired the market knowledge, technical skills, and financial resources to begin working on some of the ideas he had to improve efficiency and preserve quality in video field production. He identified the need for a universal camera control system and developed a prototype. Subsequent experimentation with early digital video devices soon led to his 1992 inventions for Video Field Production, Video Monitoring and Conferencing, and PC-Based Audio/Video Production. In 1989, Mr. Washino began working on high-speed video duplication and filed his first patent application with Mr. Schwab in 1993.

17. From then on, Mr. Washino developed a long series of inventions related to video production, post-production and signal distribution that could accommodate the coming digital and High-Definition "multiple format" future.

18. By October 2014, Mr. Washino had been granted twenty U.S. patents on inventions for which he is the inventor or co-inventor, with fourteen foreign equivalents.

19. Mr. Schwab was born in Chicago, Illinois on April 11, 1947. He holds a BS degree in Chemical Physics from MIT (Massachusetts Institute of Technology), a MS degree in Physics from Brown University, and has done post-graduate work towards a Ph. D. in Physics at the University of Illinois. He has taught classes in both Chemistry and Physics at the college level.

20. Mr. Schwab served in various capacities at HP/EDS Corporation, including responsibility for Worldwide Y2K Readiness auditing for a large Automotive manufacturer, and managing Enterprise-wide software implementations. Previously, he was President of SABRE Corporation, a technology consulting company that has contracted for services to Sony, MCA,

WEIDE & MILLER, LTD.
10655 PARK RUN DR.,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

rsw-5041r1            4

PolyGram and other electronics industry and entertainment companies. Before that, Mr. Schwab was VP-Technology for Technicolor, Inc., and held senior engineering, operational, and quality management posts with Technicolor, CBS/Fox Video, 20th Century Fox Video, and Bell & Howell Video.

21. Mr. Schwab also is a named inventor on more than forty patents, ranging from consumer products to secure network computing to various areas of video technology.

22. Mr. Washino and Mr. Schwab have collaborated on a number of other pioneering inventions resulting in patents in the areas of video archiving, video downloading and digital cinema.

23. The '091 Patent is directed to the field of video processing, storage and transmission. As noted in the Background portion of the '091 Patent, at the time of the application which led to the '091 Patent was filed *back in September 2002*, then existing video processing and transmission systems had a number of drawbacks, including issues associated with having to decompress and compress video along the distribution path in order to address bandwidth issues associated with video transmission/distribution systems. The inventions disclosed in the '091 Patent relate to a digital video processing or production system which is particularly suited to the processing of surveillance system video, including for storage and viewing of video and further including such viewing at remote devices.

24. Upon information and belief, Defendant operates one or more video security systems at its locations, which systems include one or more video cameras which capture video at those locations and which transmits that video to a video processing system provided by a company called DTiQ.

25. DTiQ (previously known as DTT) has a regular and established place of business at 4045 Spencer St., Las Vegas, NV 89119. DTiQ operates a video processing and transmission

system which is configured to process video provided by its customers, store that video and/or transmit the video for remote viewing, such as through computing devices or mobile phones of its customers, as evidenced, for example, in a DTiQ (DTT) System Features document, a copy of which is attached herewith as Exhibit 3.

26. Defendant contracts with DTiQ to provide its infringing video security system capabilities and methods to Defendant. Upon information and belief, Defendant's officer and representative, Jeffrey S. Klein, President of JSAN Subs, Inc., initially signed up five Capriotti's Sandwich Shop locations to use DTiQ's video security system in 2014 and this contractual relationship between Defendant and DTiQ was expanded by October 2015 to include all of Defendant's Capriotti's Sandwich Shop locations, including numerous locations in the Las Vegas metropolitan area and elsewhere, as evidenced in a published press release dated February 9, 2016, and attached herewith as Exhibit 4.

27. As a result of the relationship between DTiQ and Defendant, DTiQ serves as an agent of Defendant and comprises a contracted performer of one or more steps of the claims of the '091 Patent, whereby Defendant effectively performs or practices each and every step of one or more of the claims of the '091 Patent.

28. Upon information and belief, Jeffrey S. Klein further, as Defendant's officer, detailed the operations and advantages of using DTiQ's video security systems at Defendant's stores, as detailed in a DTiQ publication ("Capriotti's Case Study") publicly available via DTiQ's website (www.dtiq.com) and attached herewith as Exhibit 5.

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 10,499,091**

29. Plaintiff incorporates by reference each of its foregoing allegations.

30. Without license or authorization and in violation of 35 U.S.C. § 271(a), on information and belief, Defendant directly infringes one or more claims of the '091 Patent in this

rsw-5041r1                                    6

1  Judicial District and throughout the United States, literally or under the doctrine of equivalents,

2  by performance of all of the elements of one or more of the claims of the '091 Patent.

3      31.    On information and belief, since at least the date that Defendant was served with

4  a copy of this Complaint, Defendant has known of the '091 Patent and that performance of the

5  inventions claimed therein results in direct infringement of one or more claims of the '091 Patent,

6  and Defendant has engaged in actions which have knowingly resulted in such direct infringement.

7      32.    Plaintiff reserves the right to modify its infringement theories and further name

8  and identify Defendant and Defendant actions as discovery progresses in this case; it shall not be

9  estopped for infringement contentions or claim construction purposes by any claim charts or

10 preliminary infringement evidence that it may provide.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

A.    That this Court enter a Judgment that Defendant has infringed the '091 Patents- under 35 U.S.C. § 271;

B.    An accounting of all infringing acts including, but not necessarily limited to, those acts presented before this Court;

C.    Pursuant to 35 U.S.C. § 284, an Order for an award of damages adequate to compensate Plaintiff for Defendant's infringement, and in no event less than a reasonable royalty, together with interest and costs;

D.    Pursuant to 35 U.S.C. § 283, that this Court direct and Order via permanent injunction that Defendant immediately and permanently cease engaging in infringing acts against the claim bounds of the Patent-in-Suit.

E.    Award reasonable attorneys' fees, costs, and expenses incurred by Plaintiff in prosecuting this action, pursuant to 35 U.S.C. § 285; and

WEIDE & MILLER, LTD.
10655 PARK RUN DR.,
SUITE 100
LAS VEGAS,
NEVADA 89144
(702) 382-4804

rsw-5041r1    7

F.  Award such other and further relief at law or in equity that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(b).

DATED: September 4, 2020.

          **WEIDE & MILLER, LTD.**

          */s/ F. Christopher Austin*
          F. Christopher Austin, Esq. (NV Bar No. 6559)
          caustin@weidemiller.com
          R. Scott Weide, Esq. (NV Bar No. 5541)
          sweide@weidemiller.com
          10655 Park Run Drive, Suite 100
          Las Vegas, NV 89144

          *Attorneys for Plaintiff HAWK TECHNOLOGY SYSTEMS, LLC*

WEIDE & MILLER, LTD.
10655 PARK RUN DR., SUITE 100
LAS VEGAS, NEVADA 89144
(702) 382-4804